W. E. SELLERS (PARTY IN INTEREST, DOING BUSINESS AS JOHN SELLERS & SONS) *v.* THE CRONITE CO., INC. (No. 4915)[1]

THE CRONITE CO., INC. *v.* UNITED STATES, W. E. SELLERS (DOING BUSINESS UNDER THE NAME OF JOHN SELLERS & SONS), PARTY IN INTEREST (No. 4917)

---

[1] C. A. D. 668.

United States Court of Customs and Patent Appeals, December 13, 1957

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for W. E. Sellers.
*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for Cronite Co., Inc.

[Oral argument October 10, 1957, by Mr. Schwartz and Mr. Donohue]

Before JOHNSON, Chief Judge, and O' CONNELL, RICH, and JACKSON (retired), Associate Judges

JOHNSON, Chief Judge, delivered the opinion of the court:

This case involves an appeal and a cross-appeal from a judgment of the United States Customs Court, Second Division, entered pursuant to its decision (C. D. 1847), sustaining in part a protest against the collector's classification and duty assessment of merchandise invoiced as steel plates, 24 inches long, ½ inch thick and ¾ to 3¼ inches wide.

The collector classified this merchandise as plates of iron or steel, polished, under the provisions of paragraph 309 of the Tariff Act of 1930 and imposed duty thereon at the rate of 1¼ cents per pound.

Two protests were filed by the Cronite Co., Inc. (hereinafter referred to as appellee), an American manufacturer of the same class of goods as those here in question, against the collector's classification, said protests having been filed by authority of section 516 (b) of the

Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (52 Stat. 1077) and Public Law 773, 80th Congress (62 Stat. 869). The protests were consolidated for trial.

Appellee, in its protest,[2] urged that the merchandise is properly dutiable under the provisions of paragraph 397, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as articles, wholly or in chief value of steel, or alternatively under paragraph 304, subject to an additional duty provided in paragraph 315, as bars, cold rolled or polished. Other claims were made and discussed below but inasmuch as they are not pressed on appeal, no mention will be made thereof.

The court below, after ruling on certain alleged jurisdictional defects in appellee's pleadings to be discussed *infra*, concluded that the merchandise was classifiable as bars, neither cold rolled nor polished, under the provisions of paragraph 304, and dutiable at the appropriate rate provided therein.

From this action W. E. Sellers [3] (the importer and party-in-interest in this appeal, hereinafter referred to as appellant) appealed, urging as he did below that the collector's classification was correct.

A cross-appeal was filed by appellee, essentially urging that the court erred in not sustaining his claim for classification of the merchandise under paragraph 397.

Before progressing to a consideration of the case on its merits, it would be well briefly to mention the alleged jurisdictional defect noted *supra*. Said defect was urged by appellant and related to the validity, under the provisions of section 516 (b), as amended, of the second protest filed by appellee. The lower court held the second protest invalid. While the court's action in this respect was assigned as error on cross-appeal by appellee, it expressly abandoned this assignment during oral argument and agreed that only the first protest, 241476–K, is involved here on appeal. In view of this concession, no further mention will be made of this point.

The pertinent portion of the paragraphs material to the issues in this case read as follows:

Par. 309:

* * * sheets and plates of iron or steel, polished, planished, or glanced, by whatever name designated, 1¼ cents per pound: * * *

Par. 304:

Steel ingots, cogged ingots, blooms and slabs, by whatever process made; die blocks or blanks; billets and bars, whether solid or hollow; * * * all the foregoing * * * valued above 16 cents per pound, 20 per centum ad valorem: * * *

---

[2] There was some question in the lower court as to what claims were embraced by appellee's protests, as well as to the effect of certain amendments to said protests submitted by appellee during the trial. The lower court entered and allowed the amendments, but since no question as to the court's action in this regard is raised by either party to this appeal, detailed consideration of this matter is deemed unnecessary.

[3] The United States, a nominal party to the proceedings in the Customs Court, disclaimed any active interest in the case at the outset and has taken no part in this appeal.

Par. 397, as modified:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 397<br><br>* | Articles or wares not specially provided for, whether partly or wholly manufactured:<br>      *       *       *       *<br>Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer: | *<br><br> |
| * |       *       *       *       *<br>Other (except slide fasteners and parts thereof) | *<br>22½% ad val. |

Par. 315:

* * * *Provided further*, That on all iron or steel bars and rods of whatever shape or section which are cold rolled, * * * or polished in any way in addition to the ordinary process of hot rolling or hammering, there shall be paid one-eighth of 1 cent per pound in addition to the rates provided on bars or rods of whatever section or shape which are hot rolled; * * *

At the trial of this case nine witnesses testified on behalf of appellee, the testimony of two of which was submitted by stipulation, and one on behalf of appellant. Numerous exhibits, both documentary and physical, were submitted and received in evidence. Included among these exhibits was Party-In-Interest Collective Exhibit B which consists of the record of *W. E. Sellers* v. *United States*, 4 Cust. Ct. 388, Abs. 43170, which record was incorporated into the record in this case.

As has heretofore been stated, all of the merchandise involved in this appeal consists of pieces of steel 24 inches long, ½ inch thick and ¾ to 3¼ inches wide. From the record it appears that the merchandise is known as engravers' steel, as its sole intended use is as dies in the engraving industry. Before importation, each length of steel receives considerable treatment to reduce it to a condition suitable for use in the engraving industry. Two sides (along the longitudinal axis) and the bottom of each piece are ground to insure the absolute squareness of dimension that is necessary for the ultimate fitting in the printing machine. Its face is more carefully treated, by grinding, to produce a high degree of smoothness, free from scale, dirt and blemishes. It is this surface upon which the engraver works and which he uses as the final printing surface. In ultimate use, and after importation, the bars are cut to the lengths desired by the engraver. The record fairly establishes that there is no engraving press extant that will take a 24 inch die, and that, as a result, every piece imported in that length must be further cut down to the desired and usable lengths.

Much of the testimony taken related to the commercial designation in the engraving industry of steel of the size here imported as "bars." It was appellee's intent, as it is on this appeal, to demonstrate that whatever might be the common name given to these articles, their commercial designation is "bars" and that, therefore, they are not embraced within the provisions of paragraph 309. Appellee also argued that the common meaning of "bar" also embraces this merchandise.

In its protest, appellee claimed that the additional duty relating to "polished" bars should be added to the primary duty provided in paragraph 304. Throughout the trial and on appeal, however, the tenor of appellee's urgings is against their classification as "polished." No cross-assignment of error as to the lower court's refusal to hold the merchandise "polished" has been made by appellee. In the view we take of appellant's case, taken in conjunction with appellee's failure to cross-assign this point as error, it will not be necessary for us to dwell too long on this point, as will hereinafter be shown. Appellee's arguments as to the applicability of paragraph 397 will be discussed at a later point in this opinion.

Appellant argues that each piece of steel is polished; that the clear wording of paragraph 309 precludes inquiry into the commercial designation of the involved importation; that the phrase "by whatever name designated" in that paragraph restricts our search to the common descriptive term thereof; and that, nevertheless, this case is controlled by legislative ratification of judicial interpretation of paragraph 309.

After careful consideration of the arguments of the respective parties, we are of the opinion that the decision of the court below must stand.

In essence, this case resolves itself into a simple competition between the definitions of the words "bar" and "plate."

As above stated, appellant argues that the words "by whatever name designated" in paragraph 309 preclude inquiry into the commercial designation of the involved importation and restricts our search to the common meaning of the provision involved, citing *United States* v. *Allen Forwarding Co.*, 42 C. C. P. A. (Customs) 33, C. A. D. 566, and *I. Shalom & Co., Inc.* v. *United States*, 22 C. C. P. A. (Customs) 85, T. D. 47067, in support thereof. In the view we take of this case, however, it is unnecessary to decide whether the common or commercial designation of the involved merchandise governs.[4] The only evidence adduced below relative to commercial designation was directed towards proof of commercial designation of the merchandise

[4] In this connection, however, see in addition to the principal cases cited, the conflicting decisions of *Kotzin Bros. et al.* v. *United States*, 14 Ct. Cust. Appls. 99, T. D. 41589; *Robinson-Goodman Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 149, T. D. 43473; *United States* v. *H. A. Caesar & Co.*, 18 C. C. P. A. (Customs) 106, T. D. 44067.

as "bars," and thus there is no possibility that such proof could aid appellant in his claim for "plates." Viewing appellant's argument in its best light, and considering only the common descriptive term to be applied to the merchandise, we nevertheless are of the opinion that the instant importation consists of "bars."

The words "plate" and "bar" are defined by standard lexicographers as follows:

Funk & Wagnalls New Standard Dictionary (1931 Ed.):

bar, *n.* 1. A piece of wood, metal, or other solid material, usually long in proportion to its width and thickness, and frequently forming a barrier or obstruction, as to a passageway. * * *

plate, *n.* 1. A flat, extended, rigid body, as of metal, of slight thickness, * * *.

Webster's New International Dictionary (1932 Ed.):

bar, *n.* * * * 1. A piece of wood, metal, or other material, long in proportion to its breadth and thickness, and having, in general, considerable rigidity, such as one used for a lever, support, hindrance, obstruction, fastening, etc.; * * *

  *   *   *   *   *   *   *

3. A piece of some substance, of indefinite size, shaped so as to be long in proportion to its breadth and thickness; * * *

plate, *n.* * * * 1. A flat, or nearly flat, and relatively thin, piece of any material, orig. only of metal; a thick sheet, slice, or lamina; esp., a perfectly flat sheet of material of uniform thickness throughout; * * * Specif., *Engineering,* a sheet of rolled iron or steel a quarter of an inch or more thick.

  *   *   *   *   *   *   *

3. A flat, smooth piece of metal on or from which anything is, or is to be, engraved, molded, deposited, or written; as a door *plate;* specif., a piece of metal on which anything is engraved to be printed; * * *

Appellant urges us to give weight to that portion of the definition of "plate" relating to "A flat, smooth piece of metal *on or from which anything is, or is to be, engraved* * * *."* (Emphasis added.) Much of the cross-examination of appellee's witnesses by counsel for appellant was directed towards the eliciting of admissions that the instant merchandise was so to be used. Appellee, on the other hand, urges that portion of the definition for "bar" relating to its dimensions (viz: "* * * shaped so as to be long in proportion to its breadth and thickness; * * *").

It is at once obvious, viewing the definitions as a whole, that, depending upon the result desired, one could effectively argue for either party by merely directing our attention to one portion of the definition rather than another. Thus, the provision in Webster's definition of "plate" for "a sheet of rolled iron or steel a quarter of an inch or more thick" certainly would include broadly the merchandise at bar. It is evident, however, that this phrase does not include all rolled steel which is a quarter of an inch or more thick, for no one would argue that rolled steel which is a quarter of an inch *square* is a plate. It is necessary, therefore, to consider the other dimensions

besides the thickness of the metal to determine whether it is a bar or a plate.

Similarly, while the imported merchandise is intended to be engraved upon and is flat and smooth, it is to be noted, as pointed out, *supra*, that the record establishes that merchandise such as is here involved, of 24″ length, is *never* engraved upon *as such*, but must first be cut down to usable lengths. Whatever may be the disposition of a particular piece of engraver's steel which is cut down to a usable length (which question we do not here decide), it is evident that this portion of the definitions is not controlling here. For otherwise, *every* piece of steel intended to be engraved upon which is flat and smooth could be classified as a plate, regardless of its state of manufacture (viz: where the sides were not squared, etc.). We cannot take such a view.

We are therefore of the opinion that the sole controlling question as to the proper classification of the merchandise in this case relates to the dimensions thereof. Is the merchandise "flat * * * and relatively thin" or "long in proportion to its breadth and thickness"? When it is borne in mind that each piece is 24 inches long, ½ inch thick and ¾ to 3¼ inches wide, it involves no strained reasoning to conclude that we are dealing with "bars" and not "plates." Where the limits are to be set it is not necessary to here decide. For present purposes, however, we are convinced that the merchandise must be classified as "bars."

Appellant contends that notwithstanding the meanings to be ascribed to the terms "bars" and "plates" the doctrine of legislative ratification of judicial construction is controlling. That doctrine provides that where a given term in a tariff statute has been judicially interpreted and thereafter reenacted in substantially the same language, the given term will, if found in a later statute, be given the same interpretation unless a contrary legislative intent clearly appears. *United States* v. *Kawahara*, 15 Ct. Cust. Appls. 231, T. D. 42242. Appellant cites a number of decisions of the Board of General Appraisers and other judicial tribunals wherein merchandise similar to the instant merchandise was held classifiable under predecessor paragraphs to paragraph 309 of the Tariff Act of 1930. It then traces the legislative history of paragraph 309 and concludes that Congress clearly intended to embrace the instant merchandise by the terms of that paragraph. An analysis of the facts clearly indicates the lack of merit therein.

In *Wm. B. Sellers* v. *United States*, 12 Treas. Dec. 448, T. D. 27684, decided in 1906, steel plates intended to be engraved and used in the printing of steel engravings, and so-called monogram dies, were classified by the collector under paragraph 193 of the tariff act of 1897 as articles of metal. The importer filed a protest, claiming that the merchandise was dutiable under paragraph 135 as steel plates or as

steel in forms and shapes. No claim was made that the importation was also subject to a supplemental duty under paragraph 141 for polished steel plates, in addition to the primary duty imposed by paragraph 135. The board concluded (and this conclusion was necessary to its decision and, therefore, not dictum) that both the collector's classification and that claimed by the importer were severally inapplicable. The board based the latter holding on the ground that the steel plates were polished to the degree provided in paragraph 141 and that inasmuch as the importer had not urged the applicability of that paragraph in conjunction with paragraph 135, he had failed to sustain his double burden of proof. The only significant description of the merchandise appearing in the opinion related to two samples which had been admitted into evidence. We quote from the board's opinion:

* * * One is a flat plate, 16½ by 9¾ inches, number 6 gage, with a highly polished surface and beveled edges, the other, the so-called die, a piece of polished steel, 5 by 2 inches, *one-half inch in thickness.* (Emphasis added.)

In Abs. 16013, 13 Treas. Dec. 927, decided in 1907, engravers' plates of the same kind as were before it in the *Sellers* case, *supra,* were considered by the board. In Abs. 16013, however, the importer properly asserted the applicability of both paragraphs 135 and 141 of the tariff act of 1897. The reported opinion recites:

Protests sustained on the authority of G. A. 6472 (T. D. 27684), relating to engravers' plates.

On appeal to the United States Circuit Court, in *United States* v. *Sellers,* 160 F. 518, 15 Treas. Dec. 265, T. D. 28852, the board's decision was affirmed, and the merchandise held to be classifiable as steel plates, polished, under the provisions of both paragraphs 135 and 141. The court, in the course of its decision, set forth in full the opinion of the board. The only significant portions of that opinion are as follows:

* * * These protests relate to steel plates for engravers' use, with highly polished surface and beveled edges. * * *

* * * the steel plates in question are of the same kind as those which were passed upon in G. A. 6472 (T. D. 27684) * * *

The court itself stated:

* * * These plates are "sheets of metal of uniform thickness and even surface" (Century Dictionary); and they are also "pieces of metal extended or flattened to an even surface with a uniform thickness" (Webster's Dictionary). * * *

On a subsequent appeal, *United States* v. *Sellers,* 166 F. 1022, 17 Treas. Dec. 101, T. D. 29521, the Court of Appeals for the Second Circuit affirmed the decision and adopted the opinion of the circuit court.

In two subsequent cases, Abs. 16236, 14 Treas. Dec. 71 and Abs. 16307, 14 Treas. Dec. 80, the board sustained protests relating to engravers' steel on the authority of G. A. 6472 (T. D. 27684). These decisions were affirmed by consent by the United States Circuit Court, 17 Treas. Dec. 331, T. D. 29692. In none of the reported decisions did an opinion of any significance appear.

Later, in 17 Treas. Dec. 214, T. D. 29616, engravers' plates were again held dutiable under the provisions of both paragraphs 135 and 141 of the tariff act of 1897, the board relying on the earlier cases cited above. The board, in its opinion, stated:

* * * Some of these are flat, thin plates of steel, with a highly polished surface and beveled edges, while others are so-called monogram dies, small plates of polished steel about one-half inch in thickness. * * *

A case involving the same or similar merchandise to that involved in the foregoing cases, *W. E. Sellers* v. *United States*, 4 Cust. Ct. 388, Abs. 43170 (the record of which has been incorporated into this case), was also cited by appellant relative to its argument of legislative ratification, but in view of the year in which that decision was handed down (1940) it can have no bearing on the question of congressional intent in 1930, the year in which the current act became effective.

Appellant notes that at least two of the foregoing decisions were expressly called to the attention of Congress. In "Notes on Tariff Revision" (1908) prepared for the use of the Committee on Ways and Means in its revision of the tariff act of 1897, the following appears with respect to paragraph 135 of that act (the subject of the foregoing cases), at page 166:

In United States v. Sellers (March 2, 1908), reported in T. D. 28852, steel plates for engravers' use with highly polished surfaces and beveled edges, and so-called monogram dies, which are small plates on which monograms are to be engraved, were held entitled to classification as steel plates against the contention of the Government that the assessment by the collector as manufactures of steel was correct. * * *

Words of similar scope and effect were also brought to the attention of Congress in the Tariff Information Survey C–4 of 1921 (pp. 29–30), relating to another of the cited decisions.

Appellant attempts to link the instant merchandise to that involved in the decisions above reviewed via the testimony of W. E. Sellers (appellant) in the instant case and the last *Sellers* case noted above (Abs 43170). Sellers testified in the latter case that the merchandise there involved was "exactly the same" as that in T. D. 29521, *supra*. Sellers, in this case, testified that the merchandise in Abs. 43170 was "exactly the same" as that in the instant case.

From the foregoing it is at once obvious that, notwithstanding the fact that Congress may have reenacted paragraphs 135 and 141 of the tariff act of 1897 in substantially the same language in the

act of 1909, and continued to use such language throughout the subsequent tariff acts, appellant's contentions are unavailing. Throughout the years this court and its predecessor in customs jurisdiction have found the doctrine of legislative ratification to be of immeasurable aid as a device by which to gage the intent of Congress. Indeed, it is one of the more certain tools of construction of the language used in tariff acts. It would be doing violence to all rules of construction, however, for us to charge Congress with knowledge of facts not apparent on the face of published opinions, or contained therein by necessary inference, in the application of this doctrine. Just as the presumption of legislative approval has been held not to apply to an abstract of a judicial decision which was published without opinion, even though a brief mention of the decision was made in a voluminous appendix to a committee report on the bill containing a proposed reenactment of a tariff act, *Cunard Steamship Co., North German Lloyd* v. *United States,* 22 C. C. P. A. (Customs) 615, T. D. 47605, it should not apply to a case in which there is a published opinion, but the facts necessary to the determination of whether there has been legislative ratification do not appear therein.

On the face of the opinions in the decisions cited by appellant nothing appears to indicate to the reader that merchandise with characteristics of the here involved engravers' steel was involved. At best, one could conclude that merchandise of the same surface finish was involved. It is clear, however, that more than a certain surface finish is necessary to constitute the items "bars" or "plates." The dimensions are the all-controlling factor, and the published opinions above are unusually bare in the recitation of such dimensions. Only in the first cited case (T. D. 27684) do any dimensions of note appear in the opinion and these do not embrace the instant merchandise. Though in that opinion, one of the items was of ½ inch thickness, the length and width dimensions of that item remove it from any possible classification as a bar. It is immaterial that, *in fact,* the same merchandise *was* involved (as claimed by Sellers) for, as aforesaid, Congress is not to be charged with knowledge beyond the bounds of the published opinions. While, as will hereinafter be shown, these decisions do suffice to indicate legislative ratification as to a *different* question, they do not help appellant on this particular point.

In view of our conclusion that the merchandise consists of "bars," it is unnecessary to consider appellant's further argument that they are polished, inasmuch as a finding that the items are both polished *and* plates is necessary to uphold appellant's urged classification under paragraph 309. And since appellee did not assign as error the lower court's refusal to hold the bars "polished" and subject to an addi-

tional duty under paragraph 315, no further consideration will be given at this point.

It is necessary, however, to consider one additional question. Appellee has cross-assigned error as to the lower court's failure to hold that the instant merchandise is properly classifiable under paragraph 397 as a manufactured steel article, not specially provided for. Appellee's argument on this point is two-pronged:

(1) that the articles in question have been so manufactured (smoothed surfaces, etc.) as to dedicate them to a specific use in the engraving trade and to remove them from classification as bars; that being elsewhere more specially provided for, their proper classification is under paragraph 397, citing *Hirsch & Co., et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T. D. 33365 (wherein steel strips, plated with nickel, were held not to be duitable under paragraph 124 of the tariff act of 1909 as "bands and strips of steel" but rather under paragraph 199 as articles or wares not specially provided for composed of steel and wholly or partly manufactured); *United States* v. *Sutherland International Despatch, and E. P. Stephenson, Agents for Kearfott Engineering Co.*, 21 C. C. P. A. (Customs) 264, T. D. 46790 (wherein brass window channels lined with felt were held not to be dutiable under paragraph 381 of the Tariff Act of 1930 as "brass angles and channels" but rather under paragraph 397 as articles manufactured of brass, not specially provided for). Also cited are *United States* v. *Strauss & Buegeleisen*, 20 C. C. P. A. (Customs) 378, T. D. 46184 and *Konishi Kotakudo Co.* v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798, both to the same effect.

(2) that the rule of *noscitur a sociis* (the meaning of a word may be ascertained by reference to the meaning of words associated with it, *United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, 283, T. D. 41886) applies; that since the word "bars" is associated with "ingots," "blooms," "slabs," "die blocks," etc., in paragraph 304, a congressional intent is evidenced to include only steel material capable of multiple uses and intended further to be processed or manufactured before being ready for ultimate use; that since the bars in question are ready for ultimate use after a simple cutting operation, they are distinguishable from the merchandise embraced within paragraph 304 and are therefore classifiable under paragraph 397.

Appellee's first contention is untenable. The cases cited merely construed the purview of certain tariff terms in the absence of any positive evidence of any contrary legislative intent. In the instant case we have clear evidence of congressional intent to include bars of the finish here involved in paragraph 304 and not in paragraph 397.

The cases cited by appellant in his attempt to prove legislative ratification of the classification of the instant merchandise as "plates," while failing for that purpose, are sufficient to indicate legislative ratification of its proper classification as between paragraphs 309 and 397. Congress was apprised in those decisions, in explicit language, of the judicial opinion that *polished* engravers' steel was properly classifiable under paragraphs 135 and 141 of the tariff act of 1897 (at least insofar as merchandise of the dimensions here involved was concerned). With these decisions before it, Congress saw fit to reenact these paragraphs as paragraphs 131 and 137, respectively, in substantially the same language, in the tariff act of 1909. In 1922, Congress again provided for polished steel plates, in paragraph 309 of the act promulgated that year, after having been informed in the Tariff Information Survey C–4 of 1921, *supra*, that substantially similar language in paragraph 135 of the tariff act of 1897 had been judicially held to embrace *polished* engravers' steel plates. Paragraph 309 of the Act of 1930 is identical with its predecessor in the Act of 1922. And in each of the acts from 1909 to the present day, paragraphs substantially commensurate with the scope of paragraph 397 of the current act were included. It is amply evident, therefore, that as between paragraphs 309 and 397, Congress intended the former, rather than the latter, to embrace *polished* steel plates intended for use in the engraving industry. It requires no strained reasoning, from the foregoing, to conclude that paragraph 304 (at least insofar as it is supplemented by paragraph 315, providing together for polished steel bars) as well must prevail over paragraph 397. For if Congress intended a provision for *polished steel plates* to prevail over the general provisions of paragraph 397, it is equally clear that it intended a provision for *polished steel bars* to so prevail. And if *polished* steel bars are not classifiable under paragraph 397, then the instant steel bars, which certainly are *no more* than polished, are not so classifiable.

The foregoing reasoning would be sufficient to refute appellee's second contention. In addition to this however, it is obvious, in view of the fact that paragraph 304, through the supplemental provisions of paragraph 315 (providing an additional duty for *polished* steel bars), embraces more than "raw" steel bars, that the rule of *noscitur a sociis* has no application to this case. Canons of construction must always yield to a clearly demonstrated legislative intent.

For the foregoing reasons, the decision of the Customs Court is *affirmed.*

WORLEY, J., concurs in the result.

JACKSON, J., Retired, recalled to participate.

WORLEY, J., was not present at the argument of this case, but, by agreement of counsel, participated in this decision.